636 S.E.2d 632

James F. EVANS, Appellant,

v.

Blake C. STEWART and Melony A. Cusack, Defendants,

of whom Melony A. Cusack is the, Respondent.

No. 4161.
Formerly Unpublished No. 2006–UP–306.

Court of Appeals of South Carolina.

Submitted June 1, 2006.
Decided July 5, 2006.

524

Daryl J. Corbin, of Florence, for appellant.

Robert J. Thomas and William H. Bowman, III, of Columbia, for respondent.

PER CURIAM.

In this tort action, James F. Evans appeals from the trial court's order granting summary judgment to Melony A. Cusack under the family purpose doctrine. We affirm.[1]

## FACTUAL/PROCEDURAL BACKGROUND

Evans brought this action against Blake C. Stewart and Blake's mother, Cusack, seeking damages arising from an automobile accident. Evans was a passenger in a car driven by Stewart when Stewart fell asleep at the wheel, causing a head-on collision with another car. At the time of the accident, Stewart, Evans and another friend were returning from a two day trip to the beach for spring break. Evans filed a complaint against Stewart and Cusack seeking damages from Stewart based on Stewart's negligence and damages from Cusack based on the family purpose doctrine and negligent entrustment. Cusack moved for summary judgment asserting there was no genuine issue of material fact and she was entitled to judgment as a matter of law.

At a hearing on the matter, the parties submitted the deposition of Stewart. Stewart testified that at the time of the accident, he was eighteen years old and had moved out of

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

his mother's home two to three months prior to the accident. Stewart was working full time and was sharing a house with two roommates, paying approximately $150 a month in rent. He was entirely self-supporting. Stewart had moved out of his mother's home because he could not get along with his stepfather. Although he did move back in with his mother following the accident because he needed someone to take care of him, it was not his intention to return to her home after he moved. The truck Stewart was driving at the time of the accident was purchased by Stewart for a total of $1,200, with $1,000 from money he had in savings and $200 from his stepfather. Because Stewart was only seventeen at the time of purchase, the car was registered in Cusack's name. Cusack also paid Stewart's insurance until Stewart "could get on [his] feet." Stewart testified he drove the truck mostly and considered it his truck, and that he paid for gas and the maintenance of the truck. The truck stayed in Stewart's possession, he drove it to and from work, and he used it for recreational purposes. When the accident occurred, Stewart did not feel he needed to ask his mother's permission to take the vehicle to the beach, and she did not know that he had gone on the trip.

Additionally, Cusack submitted her affidavit in which she swore, although the truck in question was titled in her name, she was not the true owner; that she and her husband gave Stewart $200 toward the purchase of the automobile but that Stewart used $1,000 of his own money to buy the truck; Stewart was still a minor at the time of purchase and the truck was therefore registered in her name; Stewart was responsible for all costs and expenses involved in operating the truck; Stewart was the sole user of the truck and he kept it for his own pleasure and convenience; and at the time of the accident, she had no control over Stewart's use of the truck and had no knowledge of his trip to the beach.

The trial judge noted that Stewart did not live with Cusack, he was self-supporting, the truck was kept at Stewart's residence and was in his sole possession, Stewart paid the insurance, maintenance and gas for the vehicle, and at the time of the accident, Stewart was on his way back from a beach trip of which Cusack had no knowledge. He found Evans had not presented any evidence to contradict the testimony of Stewart or the affidavit of Cusack, and thus found there was no basis

to support Cusack's liability under the family purpose doctrine and Cusack was entitled to judgment as a matter of law. He further determined there was no basis to support a claim for negligent entrustment as there was no evidence Cusack had control over the truck, nor any evidence that Stewart was addicted to intoxicants or had the habit of drinking or drove while intoxicated. Accordingly, he also found Cusack was entitled to summary judgment on the negligent entrustment cause of action as well.

## STANDARD OF REVIEW

"The purpose of summary judgment is to expedite disposition of cases which do not require the services of a fact finder." *George v. Fabri*, 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001). "A motion for summary judgment shall be granted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Rule 56(c), SCRCP). When reviewing the grant of a summary judgment motion, this court applies the same standard which governs the trial court under Rule 56(c), SCRCP. *Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002). In determining whether a genuine issue of fact exists, the evidence and all factual inferences drawn from it must be viewed in a light most favorable to the nonmoving party. *Sauner v. Pub. Serv. Auth. of South Carolina*, 354 S.C. 397, 404, 581 S.E.2d 161, 165 (2003). It is not sufficient for one to create an inference that is not reasonable or an issue of fact that is not genuine. *Durkin v. Hansen*, 313 S.C. 343, 346, 437 S.E.2d 550, 552 (Ct.App.1993). Although summary judgment is a drastic remedy which should be cautiously invoked, where a verdict is not reasonably possible under the facts presented, summary judgment is proper. *Bloom v. Ravoira*, 339 S.C. 417, 425, 529 S.E.2d 710, 714 (2000).

## LAW/ANALYSIS

Evans contends the trial judge erred in granting summary judgment to Cusack under the family purpose doctrine. He asserts there were genuine issues of fact in dispute relating to

ownership, control, and use of the vehicle such that summary judgment was inappropriate. We disagree.

"Under the family purpose doctrine, the head of a family who owns, furnishes, and maintains a vehicle for the general use and convenience of his family is liable for the negligence of a family member having general authority to operate the vehicle for such a purpose." *Thompson v. Michael,* 315 S.C. 268, 272, 433 S.E.2d 853, 855 (1993). The doctrine has its genesis in the law of agency, and it will impose liability on a parent when a child is acting as his agent. *Id.* Thus, "one 'who has made it his business to furnish a car for the use of his family is liable as principal or master when such business is being carried out by a family member using the vehicle for its intended purpose, the family member thereby filling the role of agent or servant.' " *Campbell v. Paschal,* 290 S.C. 1, 8, 347 S.E.2d 892, 897 (Ct.App.1986) (quoting 8 A.L.R.3d 1191 at 1196 (1966)). Even if a parent owns the car, it must be determined whether the parent provided the car for the general use and convenience of the family, and if the car was not provided for the general use and convenience of the family, there is no relationship of principal and agent at the time of the wreck to impose liability on the parent. *Thompson,* 315 S.C. at 273, 433 S.E.2d at 855. Further, while the applicability of the family purpose doctrine is ordinarily a question of fact for the jury, where no factual issue is created the question becomes one of law, properly decided by the trial judge. *Lucht v. Youngblood,* 266 S.C. 127, 133, 221 S.E.2d 854, 857 (1976).

Evans points to Stewart's deposition testimony in arguing genuine issues of fact exist. He asserts Stewart testified that while he drove the truck, it was titled in Cusack's name, and Stewart received no insurance proceeds from the loss of the vehicle. He also notes Stewart stated that Cusack could have driven the truck if she wanted to and she controlled who drove the truck, and that if Cusack had needed the truck to haul something somewhere, she could have used it. Finally, he asserts Stewart's testimony that Cusack had instructed him to bring the truck back to her once or twice while he lived away from home was evidence of her continued control of the use of the truck after he moved out of her home.

528

A review of Stewart's deposition reveals that, while the truck was titled in Cusack's name, Stewart provided the bulk of the funds to purchase the vehicle, he paid for the maintenance of the vehicle, the truck was titled in his mother's name merely because Stewart was a minor at the time of purchase, and Stewart considered the truck to be his. As to insurance proceeds from the totaled truck, while Stewart testified he did not receive anything for it, neither did he know if his mother received anything for it. Stewart's testimony regarding the use of the truck by others reveals only that Cusack or her husband would have been allowed to use the truck if they had the need, as Stewart, "wouldn't tell [his] mom she couldn't use the truck," and would not tell his stepfather he could not use the truck because he "respect[ed] him too." Finally, concerning Cusack's directive that he return the truck to her home after Stewart moved out, the deposition testimony shows only that "maybe once or twice" Cusack instructed Stewart to bring the vehicle back to her when the two had argued, however, the truck was not in fact taken to Cusack on those occasions, but remained in Stewart's possession.

Even if we were to assume Cusack "owned" the vehicle since it was titled in her name, ownership alone is insufficient. There must also be evidence Cusack furnished and maintained the vehicle for the general use and convenience of her family. If the car was not provided for the general use and convenience of her family, there is no relationship of principal and agent at the time of the wreck to impose liability on Cusack. Viewing the evidence in the light most favorable to Evans, there is simply no evidence Cusack furnished and maintained the truck for the general use and convenience of her family such that she is liable as principal or master for Stewart's use of the vehicle as her agent or servant.

For the foregoing reasons, the order granting Cusack summary judgment is

**AFFIRMED.**

HUFF, STILWELL, and BEATTY, JJ., concur.